Shirley GARCIA, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 478S58.

Supreme Court of Indiana.

Sept. 11, 1979.

Thomas D. Ryan, East Chicago, for appellant; Jay N. Given, East Chicago, of counsel.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant was convicted in a trial by jury of conspiracy to commit murder, a class A felony, Ind. Code § 35–41–5–2 (Burns 1979), and sentenced to twenty years imprisonment. Her sentence was suspended and she was placed on five years probation. On appeal she raises the following issues:

(1) Whether the defendant can be convicted of conspiracy when the only person with whom the defendant conspired was a police informant who only feigned his acquiescence in the scheme.

(2) Whether the trial court erred in failing to instruct the jury on the potential penalties upon conviction of the defendant.

At the close of all of the evidence the defendant moved for a directed verdict of acquittal alleging that the State had failed to prove that there was an "agreement" between the defendant and the alleged co-conspirator. The motion was denied by the trial court, which denial the defendant now assigns as error.

The evidence introduced at trial consisted of the following: On September 30, 1977, State's witness, Allen Young, was first contacted by the defendant with regard to certain marital problems that she was having. She stated that her husband constantly beat her and her children and that she "couldn't take it any longer"—that she wanted her husband killed. Young suggested that she go to the police or see an attorney, but she refused, stating that to do so would only make matters worse. Young then mentioned the sum of $5000.00 in an attempt to discourage her. She responded that the amount was out of the question and ended the conversation. Young testified that he had not taken the defendant seriously at that point, because he thought that she was simply upset and needed to "blow off stem." He received a second call from the defendant on October 4, 1977. During this conversation, the defendant said that she had $200 in cash and wanted to know whether he had found anyone to kill her husband. Young responded that he did not think he could help her since he did not know anyone who was in that line of "business." She asked him to look around anyway. Young testified that, although he did not directly promise to find someone for her, he probably left her with the impression that he would do so. Shortly after talking with the defendant, Young went to the Whiting Police Department and discussed the matter with two detectives. He offered to call the defendant and let them listen and record the conversation, which they did. During that conversation, Young again asked the defendant if she wanted him to help her find someone to kill her husband, and she responded affirmatively. Young replied that he would try to find someone. Several more conversations took place between the defendant and Young. On each occasion the defendant reaffirmed her desire to have her husband killed, and she rejected the idea of going to the police instead. At their final meeting, Young, accompanied by a plain-clothed detective, introduced the defendant to the detective, stating that here was a man who might be willing to do the job. The defendant then produced $200, a picture of her husband, and a record of his daily habits and gave them to the detective. She agreed to pay the balance of the contract price when the "job" was completed. Defendant was subsequently arrested.

At trial, Young testified that he only feigned his acquiescence in the plan and at no time did he intend to actually carry it out.

* * * * * *

## ISSUE I

■ The issue is whether the conspiracy section of our new penal code adopts the Model Penal Code's "unilateral" concept or whether it retains the traditional "bilateral" concept.

The bilateral concept is the traditional view of conspiracy as derived from common law. It is formulated in terms of two or more persons agreeing to commit a crime, each with intent to do so. In cases where the person or persons with whom the defendant conspired only feigned his acquiescence in the plan, the courts have generally held that neither person could be convicted of conspiracy because there was no "conspiratorial agreement." *See, e. g., United States v. Chase,* (4th Cir. 1967) 372 F.2d 453, 459, cert. den., 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626; *Sears v. United States,* (5th Cir. 1965) 343 F.2d 139, 142; *King v. State,* (1958) Fla., 104 So.2d 730; *People v. Atley,* (1974) 392 Mich. 298, 220 N.W.2d 465, 471; *Regle v. State,* (1970) 9 Md.App. 346, 264 A.2d 119; *Moore v. State,* (1974) Miss., 290 So.2d 603, 605; *Johnson v. Sheriff, Clark County,* (1975) 91 Nev. 161, 532 P.2d 1037, 1038; *State v. Mazur,* (1978) (App.), 158 N.J.Super. 89, 385 A.2d 878; *State v. Horton,* (1969) 275 N.C. 651, 170 S.E.2d 466, 470; *Delaney v. State,* (1932) 164 Tenn. 432, 51 S.W.2d 485, 486–487; *Odneal v. State,* (1931) 117 Tex.Cr. 97, 34 S.W.2d 595; *Woodworth v. State,* (1886) 20 Tex.App. 375. Reacting to criticism of this viewpoint, the drafters of the Model Penal Code, though not without internal disagreement,[1] adopted a "unilateral" concept, as follows:

"Section 5.03. Criminal Conspiracy.

"(1) *Definition of conspiracy.* A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

"(a) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

"(b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

"Section 5.04. Incapacity, Irresponsibility or Immunity of Party to Solicitation or Conspiracy.

"(1) Except as provided in Subsection (2) of this Section, it is immaterial to the liability of a person who solicits or conspires with another to commit a crime that:

"(a) he or the person whom he solicits or with whom he conspires does not occupy a particular position or have a particular characteristic which is an element of such crime, if he believes that one of them does; or

"(b) the person whom he solicits or with whom he conspires is irresponsible or has an immunity to prosecution or conviction for the commission of the crime."

In explanation of their new approach, the Drafters of the Model Penal Code commented:

"Unilateral Approach of the Draft. The definition of the Draft departs from the traditional view of conspiracy as an entirely bilateral or multilateral relationship, the view inherent in the standard formulation cast in terms of 'two or more persons' agreeing or combining to commit a crime. Attention is directed instead to each individual's culpability by framing the definition in terms of the conduct which suffices to establish the liability of any given actor, rather than the conduct of a group of which he is charged to be a part—an approach which in this comment we have designated 'unilateral.'

"One consequence of this approach is to make it immaterial to the guilt of a conspirator whose culpability has been established that the person or all of the persons with whom he conspired have not been or cannot be convicted. Present law frequently holds otherwise, reasoning from the definition of conspiracy as an agreement between two or more persons that there must be at least two guilty conspirators or none. The problem arises in a number of contexts.

\*　　\*　　\*　　\*　　\*　　\*

1. The A.L.I. Advisory Council voted 14–11 to approve this provision. A.L.I. Model Penal Code (Tent. Draft No. 10, 1960) (hereinafter "MPC") § 503, Comments at p. 105.

"Second: Where the person with whom the defendant conspired secretly intends not to go through with the plan. In these cases it is generally held that neither party can be convicted because there was no 'agreement' between two persons. Under the unilateral approach of the Draft, the culpable party's guilt would not be affected by the fact that the other party's agreement was feigned. He has conspired, within the meaning of the definition, in the belief that the other party was with him; apart from the issue of entrapment often presented in such cases, his culpability is not decreased by the other's secret intention. True enough, the project's chances of success have not been increased by the agreement; indeed, its doom may have been sealed by this turn of events. *But the major basis of conspiratorial liability—the unequivocal evidence of a firm purpose to commit a crime—remains the same.* The result would be the same under the Draft if the only co-conspirator established a defense of renunciation under Section 5.03(6). While both the Advisory Committee and the Council support the Draft upon this point, it should be noted that the Council vote was 14–11, the dissenting members deeming mutual agreement on the part of two or more essential to the concept of conspiracy." (Our emphasis)

MPC § 5.03, Comments at pp. 104–105.

The Drafters further stated that the only basis for the old rule was a "strict doctrinal approach toward the conception of a conspiracy as a necessarily bilateral relationship." In effect, the Drafters adopted a new definition of conspiracy, one which measures the culpability of each defendant individually.

This concept has been adopted, in whole or in part, in at least 26 states and is under consideration in most of the remaining states. *See,* Note, *Conspiracy: Statutory Reform Since the Model Penal Code,* 75 Col.L.R. 1122, 1125 (1975).

In 1976, our Indiana Legislature repealed the existing conspiracy statute[2] and adopted Ind. Code § 35–41–5–2 (Burns 1979), to be effective October 1, 1977, and which reads as follows:

"35–41–5–2 Conspiracy

"[Sec. 2.] (a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a class A felony.

"(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

"(c) It is no defense that the person with whom the accused person is alleged to have conspired:

"(1) has not been prosecuted;

"(2) has not been convicted;

"(3) has been acquitted;

"(4) has been convicted of a different crime;

"(5) cannot be prosecuted for any reason; or

"(6) lacked the capacity to commit the crime.

"[As added by Acts 1976, P.L. 148, SEC. 1. Amended by Acts 1977, P.L. 340, SEC. 23.]"

The adopted statute is similar in all respects relevant herein to the final draft proposed by the Criminal Law Study Com-

2. The repealed conspiracy statute read as follows:

35–1–111–1 [10–1101]. Conspiracy to commit a felony.—Any person or persons who shall unite or combine with any other person or persons for the purpose of committing a felony, within or without this state; or any person or persons who shall knowingly unite with any other person or persons, body, association or combination of persons, whose object is the commission of a felony or felonies, within or without this state, shall, on conviction, be fined not less than twenty-five dollars [$25.00] nor more than five thousand dollars [$5,000], and imprisoned in the state prison not less than two [2] years nor more than fourteen [14] years. [Acts 1905, ch. 169, § 641, p. 584.]

mission.[3] The comments accompanying that draft state that the present law is *not* sought to be changed,[4] and defendant's position is that the Legislature did not adopt the unilateral concept in the act under which she was tried and convicted.

We are unable to determine with certainty what the commission intended by this comment, i. e. whether the enactment would merely restate the definition, without changing the result, or whether the law relative to the offense, except for the elimination of enumerated defenses, would remain unchanged. If the former was intended by the commenter, it can only be viewed as a mental lapse and proofreading oversight; as it is clear upon the face of the act that defenses available under the multilateral concept were to be eliminated. The inclusion of the "catch-all" sub-proviso (5) can leave no doubt. Clearly "any reason," as recited therein, includes the absence of criminal culpability on the part of a co-conspirator—including a sole co-conspirator. The words "agrees" and "agreement" have not been used as words of art denoting a "meeting of the minds" and "contract." Rather, the former is descriptive of the

defendant's state of mind at the time he communicated with another in furtherance of the felony; and the latter refers to the defendant's understanding.

Defendant has cited us to numerous cases supporting the bilateral concept requiring "concurrence of sentiment and cooperative conduct in the unlawful and criminal enterprise;" however, those cases were not decided under statutes remotely similar to our own. She has distinguished those cases upholding the unilateral concept upon the basis of better articulated legislative commentary or differences in the wording of the statute under attack which we do not perceive to be material. For example, the Minnesota statute (Minn.St. 609.175, subd. 2) reads "Whoever conspires with another" whereas our own refers to *agreeing* with another. Her argument that, by definition, an agreement requires the concurrence of sentiment of at least two individuals could be applied with even greater logic to the Minnesota statute and its use of the word "conspires." It is not persuasive in the light of the express wording of the entire enactment.

---

3. The Study Commission's proposed draft read as follows:

    Sec. 2. Criminal conspiracy.—(a) A person is guilty of criminal conspiracy if, with intent that a crime be committed, he agrees with another person to the commission of that crime. Provided, however, That no person shall be convicted of criminal conspiracy to commit a crime unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by him or by a co-conspirator.

    (b) It is not a defense to a charge of criminal conspiracy that the person with whom the defendant is alleged to have conspired:

        (1) has not been prosecuted or convicted; or
        (2) has been convicted of a different crime; or
        (3) cannot be prosecuted for any reason; or
        (4) has been acquitted; or
        (5) lacked the capacity to commit the crime.

    (c) Criminal conspiracy to commit capital murder is a class A felony. Otherwise criminal conspiracy is the same class felony or misdemeanor as the crime which was intended to be committed.

Indiana Penal Code (Proposed Final Draft, 1974), p. 69.

4. The comments of the drafters regarding the proposed Penal Code can be helpful in determining legislative intent. *See, Hardin v. State*, (1976) 265 Ind. 635, 639, 358 N.E.2d 134, 136. Their comments on the definition of conspiracy were as follows:

    As to what constitutes "conspiracy" or what amounts to conspiratorial agreement, the present law, as reflected in the reported cases of the Indiana Supreme Court, is not sought to be changed. "In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Evidence of mere relationship or association between the parties does not show a conspiracy." *Mattingly v. State*, 237 Ind. 326, 145 N.E.2d 650 (1957); *Johnson v. State*, 208 Ind. 89, 194 N.E. 619 (1935); *Brewster v. State*, 186 Ind. 369, 115 N.E. 54 (1917). Indiana Penal Code (Proposed Final Draft, 1974) Comments at p. 70.

## ISSUE II

Defendant's second assignment of error is addressed to the court's preliminary and final instructions advising the jury that the fixing of punishment, in the event of a guilty verdict, was a judicial function and not of concern to the jury. Ind. Code § 35–50–1–1 (Burns Supp.1978) provides "The court shall fix the penalty and sentence a person convicted of an offense." We held in *Feggins v. State,* (1977) 265 Ind. 674, 685, 359 N.E.2d 517, that it was error for the court to instruct and improper for the prosecutor to argue that a convicted defendant will serve a lesser sentence than that to which the jury sentences him. The same logic seems to apply with respect to apprising the jury of the potential sentences in the event it returns a guilty verdict. Such an advisement can only invite the jurors to be influenced by their independent judgment of the fairness of the statute—a matter dehors their task—in making their determination.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.