Anthony G. **HERNANDEZ**, Appellant (Defendant Below),

v.

**STATE of Indiana**, Appellee (Plaintiff Below).

No. 68S00–0009–CR–563.

Supreme Court of Indiana.

Jan. 30, 2002.

Michael K. Ausbrook, Bloomington, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, for Appellee.

BOEHM, Justice.

Anthony Hernandez was convicted of the murder of Berenice Keffer and sentenced to sixty years imprisonment. In this direct appeal, Hernandez contends that (1) his Sixth Amendment right to the assistance of counsel under the United States Constitution was denied and (2) his right to be heard and to be present under the Indiana Constitution was denied. We affirm the judgment of the trial court.

**Factual and Procedural Background**

On May 30, 1982, Berenice Keffer was found dead in her house. Keffer's house had been broken into, and she had been severely beaten and sexually assaulted. The cause of death was asphyxiation.

Ten years later, Anthony Hernandez was charged with burglary, murder, and rape. After two trials ended in hung juries, the State amended its charging information to charge only a single count of murder.

The third trial started on July 24, 2000. After four days of evidence, the jury began its deliberations at 2:30 p.m. on July 28. Shortly thereafter, the jury sent out a note requesting to view a footprint and the evidence bearing on the time of death. After the court informed both parties of the note, the jury was brought back into the courtroom and, in the presence of the parties, the jury received the requested evidence. The jury returned to deliberations. There was no objection to this procedure.

At approximately 7:00 p.m., the jury sent a second note which asked, without punctuation: "What if we are a hung jury What will happen to Mr. Hernandez Will he go free or have another trial." The record is silent as to the court's response, if any, to this question. At 8:30 p.m., the jury found Hernandez guilty of murder.

**I. Sixth Amendment Right to the Assistance of Counsel**

A. *What Hernandez Does Not Claim*

Although we usually address the contentions of the parties, because Hernandez makes a novel claim, we think it useful to point out that Hernandez does not advance a number of similar contentions that are frequently presented to this Court. He quite properly does not argue that the court's inaction constituted an improper *ex parte* communication. Indeed, it was not a communication at all, if there was no response. Nor does he claim that the refusal to respond constituted an improper communication. This is also astute because if the response was a simple refusal to answer, that is harmless error to the extent

it is an *ex parte* communication. *Bouye v. State*, 699 N.E.2d 620, 628 (Ind.1998).

Hernandez also makes no claim that it was an error of substantive law to refuse to respond. Once again, we agree with his judgment in selecting the issue to present on appeal. We think instructing a jury on the consequences of deadlock is similar to other inappropriate instructions. These include an instruction on the effect of deadlock in a sentencing hearing in a capital case under the Federal Death Penalty Act, *Jones v. United States*, 527 U.S. 373, 383–84, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), an instruction to consider that the defendant would receive credit for time served for his conviction, *Wilson v. State*, 169 Ind.App. 33, 34–35, 346 N.E.2d 279, 281 (1976), an instruction on the possibility of parole, pardon, or "good time" sentence reduction, *Feggins v. State*, 265 Ind. 674, 685–86, 359 N.E.2d 517, 523–24 (1977), or an instruction on potential sentences the defendant may be given if convicted, *Taylor v. State*, 420 N.E.2d 1231, 1233 (Ind. 1981). In holding it improper to instruct on potential sentences, this Court pointed out that such an instruction would " 'invite the jurors to be influenced by their independent judgment of the fairness of the statute.' " *Drake v. State*, 272 Ind. 302, 304, 397 N.E.2d 600, 601 (1979) (quoting *Garcia v. State*, 271 Ind. 510, 517, 394 N.E.2d 106, 111 (Ind.1979)). Like sentencing, a description of the possible effect of a hung jury invites the opportunity for the jury to consider circumstances that have no bearing on the defendant's guilt or innocence.

■ Finally, Hernandez does not argue that Indiana statutes require a response. We agree that the trial court had no statutory duty to respond to the note. Whether or not the federal constitution requires the defendant's presence or the assistance of counsel in responding to jury inquiries,

section 34–36–1–6 of the Indiana Code provides:

> If, after the jury retires for deliberation:
> (1) there is a disagreement among the jurors as to any part of the testimony; or
> (2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Ind.Code § 34–36–1–6 (1998). Indiana case law has specified the procedure to follow in addressing a jury inquiry. The judge is to notify the parties of the jury request, inform the parties of the court's proposed response prior to communicating with the jury, and answer the request in open court with the parties present. *Bouye*, 699 N.E.2d at 628. When these guidelines are not followed, any communication between the judge and jury without notifying the defendant is presumptively error. *Marsillett v. State*, 495 N.E.2d 699, 709 (Ind.1986). However, the presumption is rebuttable, and failure to follow these guidelines does not constitute per se grounds for reversal. *Grey v. State*, 553 N.E.2d 1196, 1198–99 (Ind.1990). Although the note requested that the court instruct on a point of law (the effect of a hung jury), for the reasons already discussed, it was not a request the court should have honored. Accordingly, the second note was not a request for a "point of law arising in the case," and section 34–36–1–6 does not apply.

### B. *What Hernandez Does Contend*

Hernandez contends that the second note showed that the jury was deadlocked and that at least some jurors considered convicting Hernandez because he might go free if the jury could not return a verdict.

Hernandez contends that this situation presented the potential for a motion for a mistrial based on a deadlocked jury or the opportunity for him to request curative instructions. He therefore argues that the point at which the jury sent the note was one which required counsel's judgment and advocacy, and was a "critical stage" of the proceeding such that the Sixth Amendment required presence of counsel.

Hernandez also argues that the error he identifies, by its very nature, cannot be harmless. He contends that the note implied that the jury could not agree and that some jurors, at least, were considering convicting Hernandez for reasons related only collaterally, if at all, to the evidence presented at trial. Hernandez contends that the State cannot show the error was harmless because the State cannot show that a mistrial would have been denied or that Hernandez could not have taken other curative measures if he had been given the opportunity to request them. Hernandez urges that this case is more egregious than an *ex parte* communication between a judge and jury regarding evidence because it is impossible to analyze, after the fact, what might have happened had Hernandez simply been given the opportunity to respond.

### C. *Receipt of the Second Jury Note As a Critical Stage of the Proceedings.*

■ "[T]he right to be represented by counsel is among the most fundamental of rights." *Penson v. Ohio*, 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). It "assure[s] that the 'guiding hand of counsel' is available to those in need of assistance." *United States v. Ash*, 413 U.S. 300, 307–08, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). The Sixth Amendment to the United States Constitution requires the assistance of counsel at all critical stages of proceedings. *See, e.g., United States v.*

*Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The right to the assistance of counsel is so essential that prejudice is presumed when there is actual or constructive denial of the assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, the United States Supreme Court has held that denial of this constitutional right is "subject to a harmless error analysis unless the deprivation, by its very nature, cannot be harmless." *Rushen v. Spain*, 464 U.S. 114, 117–18 n. 2, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (citations omitted).

■ The right to the assistance of counsel extends to several situations deemed "critical stages" in the proceeding. These include post-indictment interrogation, whether custodial or not, *Massiah v. United States*, 377 U.S. 201, 207, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); preliminary hearings to determine probable cause to prosecute, *Coleman v. Alabama*, 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); arraignments, *Hamilton v. Alabama*, 368 U.S. 52, 53, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); post-charge lineups, *Moore v. Illinois*, 434 U.S. 220, 231, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); revocation of probation and deferred sentencing proceedings, *Mempa v. Rhay*, 389 U.S. 128, 137, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); felony trials, *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); misdemeanor trials when imprisonment is actually imposed, *Scott v. Illinois*, 440 U.S. 367, 373–74, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); overnight recesses during trial, *Geders v. United States*, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); and appeals as a matter of right, *Douglas v. California*, 372 U.S. 353, 357, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

The United States Supreme Court has not addressed whether the point at which

a jury sends out a note during deliberations is a critical stage for Sixth Amendment purposes. However, the Court has been confronted with a case involving a communication between the judge and a juror without informing counsel. In *Rushen*, the State conceded that the undisclosed communications established a federal constitutional error, and as a result, in a five Justice per curiam opinion, the Supreme Court did not rule on the issue. *Id.* at 117–18 n. 2, 104 S.Ct. 453 Rather, the majority found any error harmless and stated, "Because we find that no actual prejudice was shown, we assume, without deciding, that respondent's constitutional rights to presence and counsel were implicated in the circumstances of this case." *Id.* Two Justices expressed differing views as to whether the court should entertain the core issue. Justice Stevens expressed the view that "[t]he defense has no constitutional right to be present at every interaction between a judge and a juror." *Id.* at 125–26, 104 S.Ct. 453.

■ Several considerations bear on what constitutes a critical stage in a proceeding. The right to the assistance of counsel at a critical point in the trial encompasses "any stage of the prosecution where counsel's absence might derogate his right to a fair trial." *Casada v. State*, 544 N.E.2d 189, 198 (Ind.Ct.App.1989), *trans. denied.* "Such a stage is a 'critical stage', and is any stage where (1) incrimination may occur or (2) where the opportunity for effective defense must be seized or be forgone." *Id.* More recently, this Court formulated the test for identifying a "critical stage" as " 'whether the defendant is confronted with the intricacies of the law or the advocacy of the public prosecutor or prosecuting authorities.' " *Dullen v. State*, 721 N.E.2d 241, 242 (Ind.1999) (quoting *Williams v. State*, 555 N.E.2d 133, 136 (Ind.1990)).

■ We agree that in this situation Hernandez may have been confronted with "intricacies of the law." The jury wanted to know what effect a hung jury would have on Hernandez. Although not involving specific evidence presented at trial or an interpretation of an instruction, the questions posed by the jurors nevertheless asked for guidance as to the effect of a hung jury. We agree with Hernandez that the note, if received, may have been a critical stage for Sixth Amendment purposes if it can be established that the trial court's response could influence the jury. However, as explained below, we are uncertain what occurred at this point in the trial. And even if we accept the version of the facts Hernandez proposes, it is not the end of the analysis. If we have a "critical stage," the burden of establishing the harmlessness of error falls on the State. *See Bouye*, 699 N.E.2d at 628 (If the parties are not notified when jurors request additional guidance from the court, a rebuttable presumption of error arises.). However, we think the burden of establishing that there is a critical stage in the first place falls on the defendant. *See Dullen*, 721 N.E.2d at 242 ("[The defendant] has not shown that he was confronted with any intricacy of the law or the advocacy of prosecuting authorities."). We cannot determine on this record whether there was a reasonable possibility that the note generated a situation where advocacy had the potential to make a difference.

Hernandez argues that the trial judge took no action regarding the second note. The record is silent as to whether the trial judge received the note, responded to the note, or advised the parties of the note. We are left to speculate as to what happened at that point. The briefs of both parties state that the note was received by the trial judge. The note appears in the record unaccompanied by any explanation.

It bears the handwritten notation "7 p.m." It is apparent the judge was familiar with the proper procedure for handling requests from the jury, and making the proper record. When the trial judge received the note requesting footprint pictures and the report on the approximate time of death, he noted on the record that counsel for both parties were present. He informed the attorneys on the record of the jury's request and his proposed response. He then brought the jury back to the courtroom to answer its request on the record.

On this record, we are unable to assess whether the second note triggered a "critical stage" because it is unclear whether there was any reasonable prospect that counsel might accomplish anything. As a result, we are unable to evaluate the degree of prejudice, if any, that would result from counsel's absence. It is not entirely clear to us that the trial court received the note, though both parties appear to assume or assert that it was received. If it was received, it is unclear whether the record of its handling is incomplete, or there simply was no response. If the latter is the case, we have no indication whether defense counsel was aware of the note or not or whether or not there was an opportunity to respond. In addition, Hernandez leaves us to speculate what curative measures he would have taken if he had been informed of the note. He argues that "the State cannot show that the error in failing to inform Hernandez about the jury's second note was harmless, because it cannot show ... what other curative measures would have been taken, either with the agreement of the parties or over Hernandez's objection, short of declaring a mistrial." Hernandez does not identify any "other curative action" he contends was not taken, but would have been taken if he had been notified of the second note.

■ Similarly, Hernandez contends that he was precluded from moving for a mistrial, but does not make a persuasive claim that there is a realistic possibility that the motion would have been granted. Section 34–36–1–7 of the Indiana Code provides, "The jury may be discharged by the court [if the] jury has been kept together until it satisfactorily appears that there is no probability of the members agreeing upon a verdict." Ind.Code § 34–36–1–7 (1998). The "[d]etermination whether to grant a mistrial is within the trial court's discretion and great deference on appeal is accorded the trial judge as he is in the best position to gauge surrounding circumstances of an event and its impact on the jury." *Reno v. State*, 514 N.E.2d 614, 617 (Ind.1987).

The second note by the jury was not a statement to the judge that the jury was in deadlock. The jury's note did not approach a conclusion that there was "no probability" of a unanimous verdict. It asked what the consequences would be if it did deadlock. Even a statement that the jury cannot agree may result in further deliberation. *Mitchell v. State*, 535 N.E.2d 498, 500 (Ind.1989); *See also Wray v. State*, 720 N.E.2d 1185, 1191–92 (Ind.Ct. App.1999), *trans. denied; Lutz v. Goldblatt Bros., Inc.*, 140 Ind.App. 678, 683, 225 N.E.2d 843, 847 (1967), *trans. denied.* In the absence of any showing of external influence, we think it unlikely there was a reasonable possibility of a mistrial at that stage. In *Mitchell,* the jury sent several notes to the court during deliberations. One note stated, "[O]ur deliberations have come to a standstill. We are at the point of deadlock. If possible we need instruction from the Court." 535 N.E.2d at 500. The judge informed the jury that he could not respond to that general inquiry, but would consider specific requests. Later, a note was sent stating, "We have reviewed

testimony in evidence again. We cannot come to a unanimous decision, we are deadlocked." The trial judge sent exhibits to the jury room after the last note. Thereafter, the jury found the defendant guilty of murder. *Id.* Although the record was silent as to how long the jury deliberated, this Court, applying former Indiana Code section 34–1–21–7,[1] found the judge exercised proper discretion in declining to discharge the jury after two notes indicating deadlock were sent. *Id.*

■ Although it is conceivable that the trial court here might have granted a mistrial, on this record it seems extremely unlikely. Unlike the jury in *Mitchell,* the jury here never stated that it was, in fact, deadlocked. After deliberating for only four and a half hours, the second note sent by the jury asked, "What if we are a hung jury What will happen to Mr. Hernandez Will he go free or have another trial." This note does not make it appear that there was "no probability of the members agreeing upon a verdict." I.C. § 34–36–1–7. Nor is it clear that the jury was deliberating based on improper considerations. Mistrial is "an extreme remedy invoked only when no other measure can rectify the perilous situation." *Kavanaugh v. State,* 695 N.E.2d 629, 632 (Ind.Ct.App. 1998).

■ Although our inability to resolve this issue is grounded on an absence of evidence, we do not believe the appropriate step is to order the trial court to supplement the record. The appellant has the burden of establishing the record necessary to his claim. Former Indiana Appellate Rule 7.2(C), in effect at the time of this appeal, provides:

> If anything material to either party is omitted from the record or is misstated therein, the trial court shall . . . upon

the order of the court of appeal pursuant to the motion of a party or on its own initiative, correct the omission or misstatement and if necessary certify and transmit a supplemental record. Incompleteness or inadequacy of the record shall not constitute a ground for dismissal of the appeal or preclude review on the merits.

This rule sets out a "specific procedure to bring into the record facts that are not contained therein but which are necessary for determination of an issue on appeal." *Witte v. State,* 516 N.E.2d 2, 5 (Ind.1987). Here, however, it is not clear that there is anything in the trial record that is not before us. Moreover, we have no trial court ruling as to the potential prejudice from any omission. The claim that the note was received, that the defense was notified, and that there would have been a reasonable prospect of a mistrial or that the opportunity was lost to influence the court's response in any way that would affect the ultimate result is simply too speculative for appellate review at this stage.

■ In sum, Hernandez has failed to establish that the note triggered a "critical stage." Hernandez may have a valid Sixth Amendment claim, but this record is insufficient to permit us to reach any conclusion as to (1) what happened in the trial court with regard to the second note; (2) if Hernandez's counsel was notified of the note, what he would have done in response to it short of moving for a mistrial; or (3) whether there is any reasonable probability that a mistrial or any other action would have resulted. Although prejudice is presumed from the absence of counsel at a critical stage, we are sufficiently in the dark as to what happened in the trial court that we are unable to determine whether

---

1. Recodified as I.C. § 34–36–1–7.

there was a critical stage or whether counsel was prejudiced. These issues are best resolved in a supplemental proceeding designed for fact finding.

## II. Indiana Right to Be Present and Heard

■ Hernandez's second contention is very similar to his first. Hernandez claims that he was deprived of his Indiana Constitutional right to be heard by counsel and himself because the trial court failed to give him notice of the jury's second note and an opportunity to respond. Specifically, he claims that if he had been given notice and an opportunity to be heard, he could have requested a mistrial, and because he was not able to request a mistrial, the jury reached a compromise verdict. Hernandez relies on *Stephenson v. State*, 742 N.E.2d 463, 492 (Ind.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 905, —— L.Ed.2d —— (2002) which recognized "state constitutional protection for a defendant's right to be present when a jury makes a request for any additional guidance during deliberations." A denial of the right to be present during all critical stages of the proceedings, like the right to counsel at a critical stage, is a constitutional right that is subject to a harmless error analysis. *Id.* We are unable to evaluate the claim for the same reason we cannot render a conclusion as to the Sixth Amendment claim.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and RUCKER, J., concur.

DICKSON, J., concurs in affirming the judgment of the trial court, but dissents as to the need for supplemental proceeding,

believing that the defendant does not have a valid Sixth Amendment claim.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Justice, dissenting.

I respectfully dissent. The effect of the majority's opinion is to relegate Hernandez's claim to post-conviction proceedings. I do not think that that is the right result.

The majority begins with an excellent analysis with which I largely agree of whether the receipt of the note constituted a "critical stage" of the proceeding requiring the assistance of counsel. Relying on *Dullen v. State*, 721 N.E.2d 241, 242 (Ind. 1999), the majority concludes that "the note, if received, may have been a critical stage for Sixth Amendment purposes." However, in the end the majority holds that the receipt of the note was not a critical stage because Hernandez does not identify any curative measures that he would have taken had he been informed of the note nor does he demonstrate any reasonable possibility that a mistrial or any other action would have resulted.

I think this analysis is incorrect. It essentially requires Hernandez to demonstrate prejudice in order to establish the existence of a critical stage. But unlike a claim of ineffective assistance of counsel in which establishing prejudice is required to demonstrate Sixth Amendment error, prejudice is not required to be shown to establish the existence of a critical stage. Rather, the fact that a defendant has been deprived of counsel at a critical stage constitutes constitutional error and the burden then shifts to the State to prove, if it can, that the error was harmless beyond a reasonable doubt. *Rushen v. Spain*, 464 U.S. 114, 123, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983). The practical consequence of this is that, if receipt of the note was a critical stage, it was the burden of the

State, not Hernandez, to demonstrate on appeal harmlessness beyond a reasonable doubt, e.g., that a mistrial would not have been granted or other curative measures could have been taken.

Given the content of the note itself and the history of this prosecution (two prior hung juries), I think it clearly was a critical stage. And the State makes no attempt to demonstrate harmlessness.