Nicholas SUDING, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 32A01–1002–CR–156.

Court of Appeals of Indiana.

March 22, 2011.

Transfer Denied June 2, 2011.

Scott Knierim, Baldwin, Adams, Knierim and Kamish, Danville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Nicholas Suding appeals his conviction of and sentence for Class A felony conspiracy to commit murder.[1] He presents the following issues for our review:

1. Whether the State's amendment to Suding's charges after the omnibus date was substantive and negatively impacted Suding's rights;

2. Whether Suding was subject to grave peril and denied a fair trial by alleged prosecutorial misconduct;

3. Whether the trial court abused its discretion when it denied Suding's motion for mistrial;

4. Whether the evidence was sufficient to convict Suding; and

5. Whether the trial court abused its discretion when sentencing Suding.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In February 2009, Suding's wife, Renee, became concerned about Suding's anger toward Tamara Scott, his ex-wife and mother of his daughter, S.S. Suding purchased devices to open locks and Renee heard him talking about entering Scott's house to stab her. At a June 2009 hearing, the trial court entered an order protecting Scott and S.S. from Suding. After the hearing Renee heard Suding talk about killing Scott, her lawyer, and the judge who presided over the protective order hearing.

In July 2009, Suding took Renee to various locations in Illinois and Kentucky that could serve as hideouts after the murders. Around that same time, Suding sold his rifle and bought two handguns. He told Renee he bought the weapons at a flea market because weapons purchased there could not be traced to him. After purchasing the handguns, Suding made two-liter bottles into silencers. In late July 2009, Suding instructed Renee to follow the judge and Scott's attorney to determine what cars they drove, where they lived, and where they parked.

On July 28, Renee reported Suding's activities to the Hendricks County Sheriff's Department. Detective Roger Call gave Renee a recording device and she recorded a conversation during which Suding discussed how he would blow up the judge's house with propane, what would happen after he killed Scott, and the order and manner in which he would kill his

---

1. Ind.Code §§ 35–42–1–1 and 35–41–5–2.

victims. Suding was arrested and the State ultimately charged him with six counts[2] of Class A felony conspiracy to commit murder. A jury found Suding guilty of three counts.[3] The court sentenced him to forty years imprisonment with five years suspended for each count, to be served concurrently.

## DISCUSSION AND DECISION

### 1. *Amended Charges*

Suding argues a late amendment denied him a reasonable opportunity to defend against the amended charges. The original charging information, filed July 31, 2009, stated:

> On or about July 19, 2009, in Hendricks County, State of Indiana, Nicholas Suding did conspire to commit the crime of Murder, a Class A felony, when, with intent to commit the felony, the defendant did agree with R.S. to do so.
>
> The following overt act was committed in furtherance of the conspiracy: Nicholas Suding purchased 2 handguns at a flea market so they could not be traced to him and scouted locations from which to shoot.

(Amended App. at 19.) On September 18, the State added five counts of conspiracy to commit murder, one for each alleged victim, and changed the date of the crime to "July 19 through July 30, 2009." (*Id.* at 13–18.)

The omnibus date was October 7. On December 16, the State amended all six charges by modifying the overt acts Suding committed in furtherance of the conspiracy to include that Suding "attempted

to identify the homes and personal vehicles of the victims and/or agreed on a date to commit the murders and/or traveled to Kentucky to find an appropriate hiding place and to create an alibi." (*Id.* at 1–6.) On December 18, the State amended the date range during which the alleged conspiracy existed to "June 1 through July 30, 2009." (*Id.* at 7–12.) Suding's trial was held January 20–22, 2010.

Suding argues he was prejudiced by the December amendments because he was given "only a small amount of time to prepare for the new issues." (Br. of Appellant at 9.) When the court permits an amendment to the charging information, "the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare his defense." Ind.Code § 35–34–1–5(d). If a court overrules a defendant's objection to a late amendment, a defendant must request a continuance to preserve any argument that he was prejudiced by the late amendment. *Haymaker v. State,* 667 N.E.2d 1113, 1114 (Ind.1996). Suding did not request a continuance and thus the issue is waived. *See id.* (issue of prejudice due to late amendment of charging information was waived because defendant did not request a continuance after his objection to the amendments was overruled).

Waiver notwithstanding, the amendments made in December 2009 did not prejudice Suding's substantial rights. For the amendment to affect Suding's substantial rights, he must prove he was denied "a reasonable opportunity to prepare

---

**2.** The State originally charged Suding with one count of conspiracy to commit murder, but later amended the charges to include five additional counts. In addition to conspiracy to kill Scott, Scott's attorney, and the judge that entered the protective order, the State

charged Suding with conspiring to kill a second judge and Scott's parents.

**3.** Suding was convicted of conspiring to murder Scott, Scott's attorney, and the judge who entered the protective order.

for and defend against the charges." *See Sides v. State,* 693 N.E.2d 1310, 1313 (Ind. 1998), *abrogated on other grounds by Fajardo,* 859 N.E.2d at 1206. The substantial rights of a defendant are not violated if the amendment does "not affect any particular defense or change the positions of either of the parties." *Id.*

In *Jones v. State,* 863 N.E.2d 333, 338–39 (Ind.Ct.App.2007), we held Jones' substantial rights were not violated by a late amendment to his charging information that changed the drug he was accused of possessing from cocaine to heroin. We noted Jones could have anticipated the amendment to the charging information, as he was privy to the same laboratory report the State used to determine the substance in his possession was heroin and not cocaine. *Id.* at 338. The same reasoning applies to the amendments herein.

During a hearing on January 8, 2010, the State explained the late amendments were due to additional evidence obtained during depositions taken in November or December 2009. As Suding's counsel was present during those depositions, we presume she was aware of the new evidence; thus she should have anticipated the amendments based on the new evidence. *See id.* Suding has not demonstrated he was prejudiced by the amendments.

### 2. *Prosecutorial Misconduct*

■■■■ Suding claims the prosecutor improperly referred to an uncharged prior bad act during his opening statement when he said: "there had been a prior allegation involving a kid, we're not going to get into that...." (Tr. at 287.) In reviewing a claim of prosecutorial misconduct, we must determine whether there was misconduct and, if so, whether it had a probable persuasive effect on the jury. *Ritchie v. State,* 809 N.E.2d 258, 268 (Ind.2004), *reh'g denied.* A claim of improper argument to

the jury is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated occurrences of misconduct, which would evidence a deliberate attempt to improperly prejudice the defendant. *Id.* at 269.

■■■■ Suding did not object when the prosecutor made that allegedly improper statement, but instead objected after the State called its first witness. Failure to present a contemporaneous objection to alleged misconduct precludes appellate review of a misconduct claim, *Booher v. State,* 773 N.E.2d 814, 817 (Ind.2002), unless fundamental error occurred. *Id.* To be fundamental error, the misconduct must have made a fair trial impossible or been a blatant violation of basic and elementary principles of due process that presents an undeniable and substantial potential for harm. *Id.* at 817. To prevail on such a claim, the defendant must establish not only the grounds for prosecutorial misconduct but also the additional grounds for fundamental error. *Id.* at 818.

Suding claims the prosecutor's statement was fundamental error and, as support, cites *Lafayette v. State,* 917 N.E.2d 660 (Ind.2009), and *Harris v. State,* 878 N.E.2d 504 (Ind.Ct.App.2007). Both are distinguishable. Lafayette's conviction of rape was overturned because the trial court allowed the State to present testimony from a victim of a prior crime committed by Lafayette.

> The State emphasized the Defendant's prior conviction in closing argument. The morally repugnant nature of the prior sexual misconduct of the Defendant, as well as the similarities in pattern and methods employed during both the prior misconduct and the rape in the instant case, received emphasis at trial. Under these circumstances, we are unable to conclude that the jury verdict

was not substantially swayed or that there was no substantial likelihood that the prior conduct testimony contributed to the conviction. *Lafayette,* 917 N.E.2d at 667.

Harris' conviction of operating a motor vehicle after his driving privileges had been suspended for life was vacated because the State questioned Harris regarding past driving offenses after both parties stipulated he was an habitual traffic offender. *Harris,* 878 N.E.2d at 506. We noted "the allusion to prior driving while suspended convictions and a driving while intoxicated conviction could only reasonably be considered as those offenses related to Harris's propensity to commit the very crime for which he was being tried." *Id.*

■■■■ The comment made by Suding's prosecutor did not rise to the level of those in *Lafayette* and *Harris.* A mistrial is not required for every fleeting reference to a criminal past, especially when the reference does not "clearly indicate" that a defendant has been convicted of a crime. *Tompkins v. State,* 669 N.E.2d 394, 399 (Ind.1996). The prosecutor's statement, "there had been a prior allegation involving a kid, we're not going to get into that," (Tr. at 287), did not necessarily indicate the prior allegation was of a criminal act. *See Bradford v. State,* 453 N.E.2d 250, 252 (Ind.1983) (mistrial not required where witness testified to seeing defendant beating up someone, as the statement did not indicate defendant had been convicted of a prior crime). Further, because the evidence against Suding was overwhelming, he cannot demonstrate a passing comment during opening statements affected the jury's decision to convict him some three days later. *See Vanzandt v. State,* 731 N.E.2d 450, 454 (Ind.Ct.App.2000) (Vanzandt was not placed in grave peril by officer's inadvertent reference to mug shots when evidence of Vanzandt's guilt was strong), *trans. denied.*

### 3. *Denial of Motion for Mistrial*

■■■■ Suding argues the trial court abused its discretion when it denied his motion for mistrial based on his wife's testimony in violation of a motion *in limine.* A mistrial is an "extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error." *Francis v. State,* 758 N.E.2d 528, 532 (Ind.2001). "On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State,* 814 N.E.2d 253, 260 (Ind.2004), *reh'g denied.*

■■■■ "When determining whether a mistrial is warranted, we consider whether the defendant was placed in a position of grave peril to which he should not have been subjected; the gravity of the peril is determined by the probable persuasive effect on the jury's decision." *James v. State,* 613 N.E.2d 15, 22 (Ind.1993). A timely and accurate admonition is presumed to cure any error in the admission of evidence, *Owens v. State,* 937 N.E.2d 880, 895 (Ind.Ct.App.2010), *reh'g denied,* so reversible error will seldom be found if the trial court has admonished the jury to disregard a statement made during the proceedings. *Warren v. State,* 757 N.E.2d 995, 999 (Ind.2001).

During the direct examination of Suding's wife, the following dialogue occurred:

> State: Anything else you can think of during that February to June time that scared you or bothered you enough to be here?
>
> Renee Suding: Um, there were a lot of behaviors um, that had changed. He

became more controlling and um, knocked me out one evening, out cold, I was passed out for I don't know how long, I just woke up to him.

(Tr. at 324.) Suding's counsel objected, and the jury was removed from the courtroom. After the judge discussed the matter with both counsel, she brought the jurors back into the courtroom and admonished them:

The Court now instructs the Jury that the last answer given by Mrs. Renee Suding, who is still on the witness stand, is stricken from the record and the Jury is instructed not to discuss, consider or refer to that testimony at any time. Mr. Suding has never been charged with any acts of domestic violence nor is he on trial for such acts.

(*Id.* at 335.)

In *Owens* we held testimony in violation of a motion *in limine* did not require a mistrial, because an appropriate admonition cured the improper statement. *Owens*, 937 N.E.2d at 895. In that case, the prosecutor asked the victim, "Now after-immediately after this happened, did you tell anybody about this?" *Id.* at 894. The victim replied, "No. I was really afraid to. Um, Greg was-he abused us." *Id.* The trial court found the statement was "fairly generic," that it was an explanation as to why the victim did not immediately report the molestation, and it was not introduced as improper character evidence. The court admonished the jury to disregard the witness' last statement. *Id.* at 894–95. We held any error in the witness's statement was cured by the admonition.

The facts of the instant case parallel those of *Owens*. The statement in violation of the motion *in limine* was brief, and relatively generic, as the witness did not go into detail regarding her accusations of domestic violence. The jury was dismissed, and when it returned to the court-

room, the court immediately instructed the jury to disregard the statement. The court reminded the jury Suding had not been charged with domestic violence, and no such incident was at issue in the trial. The trial court did not abuse its discretion in denying Suding's motion for mistrial, as it sufficiently cured the taint of the improper testimony with its admonition. *See id.*

### 4. Sufficiency of the Evidence

■ When reviewing sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). It is the fact-finder's role, and not ours, "to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* To preserve this structure, when confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence need not overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the jury's decision. *Id.* at 147.

Ind.Code § 35–41–5–2 states, "[a] person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony." The statute requires a unilateral, rather than a bilateral, agreement to commit the crime. *Garcia v. State*, 271 Ind. 510, 516, 394 N.E.2d 106, 110 (1979). Under the unilateral approach,

the culpable party's guilt would not be affected by the fact that the other party's agreement was feigned. He has conspired, within the meaning of the

definition, in the belief that the other party that was with him; apart from the issue of entrapment often presented in such cases, his culpability is not decreased by the other's secret intention. *Id.* at 513, 394 N.E.2d at 109 (citing Model Penal Code § 5.03, comments at 104–105).

Despite the holding in *Garcia,* Suding claims our decision in *Williams v. State,* 748 N.E.2d 887 (Ind.Ct.App.2001), requires we hold his co-conspirator's lack of intent is fatal to his conviction. However, our decision in *Williams* was not based on a co-conspirator's feigning intent to commit a crime. Rather, we overturned Williams' conviction of conspiracy to commit murder because there was insufficient evidence that Williams or his coconspirators intended to murder anyone when they conspired to commit only robbery. As neither Williams nor his accomplices intended to kill anyone, they had not conspired to commit murder. *Id.* at 894–95.

Because a unilateral agreement to commit a crime is sufficient to sustain a conviction of conspiracy, Renee's testimony provided sufficient evidence to convict Suding of conspiracy to commit murder.[4] *See, e.g., Garcia,* 271 Ind. at 516, 394 N.E.2d at 110.

5. *Sentencing*

■■■■■ A trial court's sentencing determination is within its discretion, and we will reverse only for an abuse of that discretion. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g by Anglemyer v. State,* 875 N.E.2d 218 (Ind. 2007). The trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable,

probable, and actual deductions to be drawn therefrom. *Id.* We may find an abuse of discretion if the trial court does not provide a sentencing statement, the sentencing statement is not supported by the record, the sentencing statement omits reasons clearly supported by the record *and* advanced by the defendant, or the trial court's reasons for sentencing are improper as a matter of law. *Id.* at 490–91. In a felony case, the trial court must give a reasonably detailed recitation of the reasons for the sentence imposed. *Id.* at 490. In reviewing sentencing decisions, we consider both the written and oral sentencing statements. *Corbett v. State,* 764 N.E.2d 622, 631 (Ind.2002).

■■■■■ Suding argues his sentence of forty years for each count, to be served concurrently, was an abuse of discretion because it was ten years beyond the advisory sentence, and the mitigators found by the trial court outweighed the aggravators. The trial court has no obligation to weigh mitigating and aggravating factors, *Anglemyer,* 868 N.E.2d at 491, nor is it required to give mitigators the same weight that the defendant does. *Rascoe v. State,* 736 N.E.2d 246, 248–49 (Ind.2000).

The trial court discussed multiple mitigating and aggravating circumstances during the sentencing hearing. With regard to mitigators, the trial court stated:

> Mr. Suding has no prior criminal history or delinquent history and up until the time of this situation was—had a—had a law abiding life; had worked hard; had contributed to the support of his children and gained the respect of those persons with whom he had contact and

---

4. Suding also argues the trial court erred in denying his motion for a directed verdict. As we have held the evidence sufficient to support his conviction, a directed verdict in favor of Suding would have been inappropriate. *Compare* Ind. Trial Rule 50(A) (judgment on the evidence appropriate where issues "not supported by sufficient evidence"). Thus the trial court did not err by denying his motion.

who had em—employed him. Court further finds that his incarceration will impact the emotional security of his children as well as their financial security. (Tr. at 812–13.) The court also noted Suding expressed remorse for his actions. However, the court also noted there were

> major aggravating circumstances in this case and it appears to this Court that the most egregious concerns the victims who were 1) an elected official of the State of Indiana, Judge Lemay–Luken, and an officer of the court, that being Mr. Hadley. I also consider that in the case of the mother of his child, Mrs. Scott, the fact that he would conspire to kill the mother of his own child and even imagining what kind of an impact had this act been carried out would have— would have had on that child is, uh, is impossible to imagine. The court finds that the crimes committed by Mr. Suding attack the very foundation and meaning of the Constitution of the United States, the Constitution of Indiana, the reason why we as Americans live in a society where we have many[,] many freedoms and we resolve our differences in courts of law. We may not be in agreement with the decisions that are issued by the courts but we respect our system and not one person in this country does—is—is deprived of the right to seek redress through our courts.

(*Id.* at 813.) The court also found as an aggravator the "impact on the families of the victims." (*Id.* at 814.) As the trial court entered an oral sentencing statement analyzing the mitigating and aggravating factors presented by Suding and supported by the record, Suding apparently is asking us to review the weight given those factors, which we cannot do. *See Anglemyer*, 868 N.E.2d at 491. Therefore, we cannot say the trial court abused its discretion in sentencing Suding.

## CONCLUSION

Suding was not prejudiced by the State's amendment of his charges past the omnibus date, and the prosecutor's comments regarding "an allegation involving a kid" did not put Suding in grave peril. The comments made by Suding's wife regarding an alleged incident of abuse did not warrant a mistrial because the court admonished the jury to disregard her statements. Finally, the evidence was sufficient to support Suding's conviction, and the trial court did not abuse its discretion in sentencing him. Accordingly, we affirm.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.