**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**NICHOLAS SUDING**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

NICHOLAS SUDING,     )
     )
    Appellant-Petitioner,     )
     )
    vs.     )   No.  32A01-1309-PC-426
     )
STATE OF INDIANA,     )
     )
    Appellee-Respondent.     )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Carol J. Orbison, Special Judge
Cause No. 32D04-1203-PC-2

**October 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Pro-se Petitioner Nicholas Suding ("Suding") appeals the denial of his petition for

post-conviction relief, which challenged his convictions for three counts of Conspiracy to

Commit Murder.[1]  We affirm.

**Issues**

Suding articulates nine issues for review.  We address those issues that are not waived,

res judicata, or procedurally defaulted,[2] consolidated as the following four issues:

I.      Whether error in the post-conviction proceedings deprived Suding of
        procedural due process;

II.     Whether Suding is entitled to a new trial because the State failed to
        disclose exculpatory evidence in violation of Brady v. Maryland, 373
        U.S. 83 (1963);

III.    Whether Suding was denied the effective assistance of trial counsel;
        and

IV.     Whether Suding was denied the effective assistance of appellate
        counsel.

**Facts and Procedural History**

The relevant facts were recited by a panel of this Court on direct appeal, as follows:

---

[1] Ind. Code §§ 35-42-1-1, 35-41-5-2.

[2] Post-conviction procedures do not afford petitioners with a "super-appeal"; rather, the post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. Reed v. State, 856 N.E.2d 1189, 1194 (Ind. 2006).  The purpose of a petition for post-conviction relief is to provide petitioners the opportunity to raise issues not known or available at the time of the original trial or direct appeal. Stephenson v. State, 864 N.E.2d 1022, 1028 (Ind. 2007).  If an issue was known and available but not raised on direct appeal, the issue is procedurally foreclosed.  Id.  If an issue was raised and decided on direct appeal, it is res judicata.  Id.  Moreover, collateral challenges to convictions must be based upon grounds enumerated in the post-conviction rule.  Shanabarger v. State, 846 N.E.2d 702, 707 (Ind. Ct. App. 2006), trans. denied; see also Post-Conviction Rule 1(1).  To the extent that Suding attempts to raise free-standing issues, they are not properly addressed through post-conviction proceedings.  Bunch v. State, 778 N.E.2d 1285, 1289 (Ind. 2002).

2

In February 2009, Suding's wife, Renee, became concerned about Suding's anger toward Tamara Scott, his ex-wife and mother of his daughter, S.S. Suding purchased devices to open locks and Renee heard him talking about entering Scott's house to stab her. At a June 2009 hearing, the trial court entered an order protecting Scott and S.S. from Suding. After the hearing Renee heard Suding talk about killing Scott, her lawyer, and the judge who presided over the protective order hearing.

In July 2009, Suding took Renee to various locations in Illinois and Kentucky that could serve as hideouts after the murders. Around that same time, Suding sold his rifle and bought two handguns. He told Renee he bought the weapons at a flea market because weapons purchased there could not be traced to him. After purchasing the handguns, Suding made two-liter bottles into silencers. In late July 2009, Suding instructed Renee to follow the judge and Scott's attorney to determine what cars they drove, where they lived, and where they parked.

On July 28, Renee reported Suding's activities to the Hendricks County Sheriff's Department. Detective Roger Call gave Renee a recording device and she recorded a conversation during which Suding discussed how he would blow up the judge's house with propane, what would happen after he killed Scott, and the order and manner in which he would kill his victims. Suding was arrested and the State ultimately charged him with six counts of Class A felony conspiracy to commit murder. A jury found Suding guilty of three counts. The court sentenced him to forty years imprisonment, with five years suspended for each count, to be served concurrently.

Suding v. State, 945 N.E.2d 731, 734-35 (Ind. Ct. App. 2011), trans. denied.

Suding's court-appointed counsel raised five issues on appeal, challenging Suding's convictions and sentence. The convictions and sentence were affirmed. Id. at 734.

On March 13, 2012, Suding filed a pro-se petition for post-conviction relief. He also filed a motion seeking a change of judge; the motion was denied. On June 21, 2012, Suding filed an amended petition for post-conviction relief. An evidentiary hearing was held on September 7, 2012, at which Suding appeared pro-se. The hearing was resumed on December 14, 2012, at which time Suding appeared by counsel. At the conclusion of the

3

hearing, the post-conviction court ordered the parties to submit proposed findings of fact and conclusions thereon.

On February 4, 2013, Suding filed motions requesting that the post-conviction court take judicial notice of certain facts. The State moved to strike various requests for admissions issued by Suding, and Suding requested judicial notice of the fact that he had served the State with the requests for admissions on January 29, 2013. On February 15, 2013, the post-conviction court denied Suding's motions to take judicial notice. On February 21, 2013, the court granted the State's motion to strike. On April 18, 2013, Suding filed a motion for summary judgment; the State responded that the motion was untimely. On April 29, 2013, the post-conviction court denied the motion for summary judgment. The parties filed their respective proposed findings and conclusions; Suding filed a motion to strike the State's proposal. This motion was denied.

On July 31, 2013, the post-conviction court entered its findings, conclusions, and order denying Suding post-conviction relief. Suding filed a motion to correct error,[3] which was denied on September 3, 2013. Suding now appeals.

**Discussion and Decision**

Standard of Review

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5);

---

[3] After the post-conviction order was entered, Suding filed a "Motion to Compel the Production of Exculpatory Evidence," claiming that the State had Suding's personal phone records and bank records. (App. 1753). He also sought relief via a petition for a writ of mandamus.

4

Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. Id. In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

### Error in Post-Conviction Proceedings – Procedural Due Process

Suding claims that the post-conviction court committed various errors in its conduct of the proceedings. According to Suding, he was entitled to a change of judge, a change of venue, judicial notice of facts addressed by requests for admission, the entry of summary judgment, and the striking of the State's proposed findings of fact and conclusions thereon. Suding asserts that the errors of the post-conviction court were so pervasive that he was denied due process.[4]

Motion for Change of Judge. Suding claims that he was denied an impartial judge, something critical to due process. According to Suding, the post-conviction judge was

---

[4] On April 29, 2013, Suding filed his "Second Complaint Against Judge" with the Indiana Commission on Judicial Qualifications. (App. 1274.) Therein, Suding alleged that he had been denied procedural due process when the post-conviction judge refused to deem certain facts admitted by the State or grant Suding summary judgment.

5

required to avoid even the appearance of bias and, once her impartiality was called into question, she was required to recuse herself.

Pursuant to Indiana Post-Conviction Rule 1(4)(b), a petitioner may request a change of judge "by filing an affidavit that the judge has a personal bias or prejudice against the petitioner" and stating "the facts and the reasons for the belief that such bias or prejudice exists." The post-conviction court is obliged to grant the motion only "if the historical facts recited in the affidavit support a rational inference of bias or prejudice." Id. On appeal, we presume that the judge is unbiased, and will overturn the denial of a motion for change of judge only upon a showing of clear error. Azania v. State, 778 N.E.2d 1253, 1261 (Ind. 2002).

Suding's motion for change of judge, filed contemporaneously with his petition for post-conviction relief, was accompanied by an affidavit stating: "[T]he P.C.R. 1 petition alleges judicial misconduct and the petitioner intends to subpoena her as a witness to the ineffective assictanc [sic] of trial counsel which puts her in a position of conflicted interest disqualifying her." (App. 27.) This language does not provide facts and reasons for the belief that bias or prejudice exists. Moreover, the trial judge could not have testified about a case tried before her. Cornett v. Johnson, 571 N.E.2d 572, 575 (Ind. Ct. App. 1991); Clary v. Lite Machines Corp., 850 N.E.2d 423, 435 (Ind. Ct. App. 2006).

On appeal, Suding has made an additional allegation; specifically, that the post-conviction judge conferred ex parte with other judges (one an alleged intended victim of the instant conspiracy). He does not point to evidence of record in this regard or explain how a

6

judicial conference of unknown subject matter could entitle him to post-conviction relief. Suding also contends that the judge was obliged to disqualify herself after learning that Suding had filed complaints against her with the Judicial Commission on Judicial Qualifications. In these complaints, Suding identified no judicial misconduct apart from the judge's issuance of rulings unfavorable to Suding.

Suding now insists that the post-conviction judge was derelict in her duties for failing to grant Suding an additional hearing, strike the State's proposed findings and conclusions, grant summary judgment in Suding's favor, and take judicial notice of numerous matters at Suding's request. In effect, he argues that the post-conviction court was biased in entering adverse rulings against him. Yet an adverse ruling is not sufficient to show bias or prejudice. Flowers v. State, 738 N.E.2d 1051, 1060 n.4 (Ind. 2000). Instead, a party "must show that the trial judge's action or demeanor crossed the barrier of impartiality and prejudiced" his case. Id. at 1061. Suding has not done so.

Venue/Jurisdiction. According to Suding, he was not tried on the conspiracy charges in a court of proper venue and having jurisdiction over his person. This argument was available to Suding on direct appeal and was not raised. It is res judicata and we will not address it here. Stephenson, 864 N.E.2d at 1028.

Requests for Taking of Judicial Notice. On February 4 and 5, 2013, Suding filed motions to take judicial notice of "the fact that": Suding had pled not guilty; no counsel was present with Suding at his arraignment; on August 17, 2009, Suding had first requested the appointment of counsel; no counsel was present at Suding's second preliminary hearing on

7

September 4, 2009; trial counsel for Suding had anticipated a need for a continuance; trial counsel failed to tender a request for a continuance after the charges were amended; Suding was married to Renee Suding-Sanders on December 1, 2008; no hearing was conducted regarded Suding's request for appointment of new counsel; Suding had requested that new counsel be appointed; trial counsel filed a motion in limine as to Indiana Trial Rule 404 evidence and the motion in limine had been granted; trial counsel failed to tender a timely objection as to Trial Rule 404 evidence; an order of protection had been issued by Judge Smith on August 6, 2009; on August 3, 2009, an order disqualifying Judge Smith had been issued, together with a request for a special judge; there had been no assertion of marital privilege at Suding's trial; Suding had been married to Renee Suding-Sanders up until their divorce on October 19, 2010; Suding had requested that the prosecution provide the defense with discovery materials; there is no evidence to show that the prosecution relinquished to Suding the fruits of the subpoena for Suding's personal telephone records; the prosecution had requested and received a subpoena for Suding's personal telephone records; no notice of alibi was given and no alibi defense was presented at trial; Suding requested that his trial counsel appeal the denial of a motion for reduction of his bail; trial counsel did not appeal the denial of bail reduction; and Suding had given specific outline instructions to his trial counsel. (App. 166-229.) Suding also requested that the post-conviction court take judicial notice of the trial court record.

On February 8, 2013, the post-conviction court denied the requests,[5] stating the reasons for the denial:

> The evidentiary hearing on Defendant's Petition for Post Conviction Relief, during which the Defendant and the State were given the opportunity to present evidence and call witnesses, concluded on December 14, 2012.
>
> The parties have now been ordered to prepare proposed Findings of Fact and Conclusions of Law, and have been given dates for said findings and conclusions to be filed with the Court.
>
> The foregoing motions constitute pre-trial discovery, which discovery process was concluded at the close of the aforementioned evidentiary hearing on December 14, 2012.

(App. 375.)

On February 11, 2013, Suding filed additional motions: a motion to amend his requests for admissions and stipulations of facts and his "Verified Motion to Take Judicial Notice that Petitioner Served Request For Admissions and Stipulation of Facts upon Hendricks County Prosecutor on 1-24-13 and were received and signed on 1-29-13." (App. 377.) On February 15, 2013, the post-conviction court denied these motions as untimely.

On February 21, 2013, Suding filed a "Petitioner's Response to State's Response to Numerous Defense Pleadings" requesting that the post-conviction court reconsider its earlier rulings and "grant the Petitioner's requests in the above matters so that due process of the law is upheld in the interest of justice." (App. 379, 388.) His request for reconsideration was unsuccessful. Suding now claims that the post-conviction court judge ignored a mandatory

---

[5] We note, however, that the post-conviction court judge had stated – in open court – that she was taking judicial notice of Suding's trial transcript.

9

duty to take judicial notice of facts established according to Indiana Evidence Rule 201(a), which, at the time of Suding's requests, provided:

> A court may take judicial notice of a fact. A judicially-noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Subsection (d) provided: "A court shall take judicial notice if requested by a party and supplied with the necessary information."

The majority of Suding's "requests for admissions" concerned historical events of his trial, such as his plea, request for counsel, motions by counsel, and rulings. The post-conviction court had taken judicial notice of the trial proceedings. Thus, Suding's post-hearing motions for judicial notice were largely superfluous. Moreover, a portion of the factual information – such as Suding's marital status at the time of trial – had been established at the post-conviction hearings. To the extent that the requests for admissions address something not presented at trial or at either post-conviction hearing, they were not timely filed. As the post-conviction court observed, Suding had rested his case at the conclusion of the December 14, 2012 evidentiary hearing. Although he baldly claims he was denied due process, Suding provides no authority to suggest that Evidence Rule 201 operates as a mechanism to supplement a party's evidence after that party has been given a full and fair opportunity for the presentation of evidence.

Requests for Admission. Indiana Trial Rule 26(A)(5) provides for a method of discovery whereby requests for admissions may be propounded upon a party. Requests for admission

10

are intended to "simplify pre-trial investigation and discovery, facilitate elimination of unnecessary evidence at trial" and reduce the time and expense demanded by litigation. General Motors Corp. v. Aetna Cas. & Sur., 573 N.E.2d 885, 888 (Ind. 1991).

Suding attached purported requests for admissions to several of his motions. The requests are addressed not to the State, as the opposing party in post-conviction proceedings, but to individuals such as the trial prosecutor, deputy prosecutor, a judge, a detective and a witness. The requests sought admissions or stipulations that exculpatory evidence was withheld, the search warrant was illegal, perjury had been solicited and committed, evidence had been mischaracterized in argument to the jury, and Suding's wife had engaged in drug use and financial misconduct. The requests were not made until after the presentation of evidence at the September and December hearings. Accordingly, these requests were not calculated to elicit admissions from a party that could simplify pre-trial investigation and discovery by establishing facts otherwise in contention. See id.

Moreover, post-conviction proceedings are not designed to permit attacks upon trial witness credibility, but rather to address issues demonstrably unavailable at trial and on direct appeal. Sanders v. State, 765 N.E.2d 591, 592 (Ind. 2002). The post-conviction court did not err in determining that the State need not respond to untimely requests for admission addressed to non-parties in an effort to collaterally attack the reliability and credibility of trial evidence.

Motion for Summary Judgment. Post-Conviction Rule 1(4)(g) grants the court discretion to consider all pleadings, depositions, answers to interrogatories, admissions, stipulations of

11

fact, and any affidavits submitted in determining whether a motion for summary disposition has merit.

In Hough v. State, 690 N.E.2d 267, 269 (Ind. 1997), an appeal from a grant of summary judgment to the State in post-conviction proceedings, our Supreme Court stated: "The summary judgment procedure that is available under Indiana Post-Conviction Rule 1(4)(g) is the same as under Trial Rule 56(C)." Under both rules, summary judgment is to be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. (citing Ind. Post-Conviction Rule 1(4)(g); Ind. Trial Rule 56(C)). The moving party must designate evidence to prove that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law and the burden then shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. Any doubts about the existence of a fact or an inference to be drawn therefrom are to be resolved in favor of the nonmoving party. Id. Upon review, we apply the same standard as the trial court and the party appealing the summary judgment order must show the appellate court that the trial court erred. Id.

Here, Suding moved for summary judgment after the evidentiary hearing was conducted. "[I]t is clear that a motion for summary judgment after all the evidence has been presented at trial is inappropriate." McMahon v. Snap on Tool Corp., 478 N.E.2d 116, 119 n.1 (Ind. Ct. App. 1985).

<u>Motion to Strike State's Proposed Findings and Conclusions</u>. After the State filed proposed findings and conclusions, Suding moved to strike the proposals in their entirety because of non-compliance with Indiana Trial Rule 11(A), which provides in part:

> Every pleading or motion of a party represented by an attorney shall be signed by at least one [1] attorney of record in his individual name, whose address, telephone number, and attorney number shall be stated, except that this provision shall not apply to pleadings and motions made and transcribed at the trial or a hearing before the judge and received by him in such form. . . . If a pleading or motion is not signed or is signed with intent to defeat the purpose of the rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served.

Suding also filed an "objection" to the State's proposed findings and conclusions requesting that the post-conviction court "take into account the false statements made by the State and strike from the record these falsities, strike from the record the attempts by the State to mislead this Court with its false statements, take into account that the State has LIED to this Court, note that the false statements made by the State are objected to, by the Petitioner and grant the Petitioner his requested Post Conviction Relief in full[.]" (App. 1733-34.) Suding's objection was unavailing. The post-conviction court did not strike the State's proposed findings and conclusions. Nonetheless, the post-conviction court did not adopt the findings and conclusions in full.

On appeal, Suding asserts that the State's proposed findings and conclusions should have been stricken at his request because the document was unsigned and unaccompanied by a certificate of service. He further asserts that the "failure to comply with [Trial Rules 5 and 11] is fatal to the pleading; failure on both of these requirements compounds this fatality … This failure requires this reviewing Court vacate Suding's conviction." Appellant's Brief at

13

Suding does not develop an argument, with citation to relevant legal authority, to support his bald assertion.

A party waives any issue raised on appeal where the party has failed to develop a cogent argument or provide adequate citation to authority and portions of the record. Smith v. State, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005), trans. denied. Suding has failed to comply with Appellate Rule 46 and we will not review a bald assertion of error.

Alleged Exculpatory Evidence – Brady Claim

Suding contends that he is entitled to a new trial because the State failed to turn over exculpatory evidence, in violation of Brady v. Maryland, 373 U.S. 83 (1963). Specifically, Suding claims that the State received his personal telephone records for the date on which the incriminating tape was made but failed to tender them to Suding's counsel. According to Suding, the records are exculpatory in that they would "place Suding miles and hours away during the alleged commission of the crime." Appellant's Brief at 28.

The State has an affirmative duty to disclose material evidence favorable to the defendant. State v. Hollin, 970 N.E.2d 147, 153 (Ind. 2012). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Evidence is material "if there is a reasonable likelihood that it might have affected the outcome of the trial." Samaniego v. State, 679 N.E.2d 944, 948 (Ind. Ct. App. 1997), trans. denied.

The establishment of a <u>Brady</u> claim requires that the defendant show: "(1) that the prosecution suppressed evidence, (2) that the evidence was favorable to the defense, and (3) that the evidence was material to an issue at trial." <u>Minnick v. State</u>, 698 N.E.2d 745, 755 (Ind. 1998). The State will not be found to have suppressed material evidence if it was available to the defendant through the exercise of reasonable diligence. <u>Bunch v. State</u>, 964 N.E.2d 274, 297 (Ind. Ct. App. 2012), <u>trans. denied</u>. The suppression of <u>Brady</u> evidence is constitutional error warranting a new trial. <u>Id.</u> at 298.[6]

The records at issue here are Suding's personal telephone records. Although Suding claims he attempted to obtain his records from the service providers, there is no evidence as to when this attempt occurred or why, through the exercise of reasonable diligence, Suding was allegedly unable to timely obtain his own records. Nor does he explain how the personal telephone records would provide exculpation.

After the post-conviction order denying him relief was entered, Suding filed his "Motion to Compel Production of Exculpatory Discovery Evidence," claiming that the State was obliged to turn over Suding's personal telephone records and bank statements pursuant to Indiana Trial Rule 28(H), which provides:

> Discovery after judgment may be had in proceedings to enforce or to challenge the judgment.

---

[6] When, in post-conviction proceedings, a petitioner claims that he has newly-discovered evidence that could not have been addressed upon direct appeal, he must also demonstrate that: "(1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial." <u>Kubsch v. State</u>, 934 N.E.2d 1138, 1145 (Ind. 2010). When a post-conviction petitioner is unable to establish these nine requirements for alleged newly-discovered evidence, a <u>Brady</u> claim premised upon that same evidence will also fail. <u>Id.</u> at 1146.

To the extent that Suding may be said to have raised a <u>Brady</u> claim, his motion only tangentially addresses exculpation: "this information relates specifically to the Petitioner's whereabouts, at the time of the alleged recording, a subject very much at issue in this case." (App. 1754.)

He asserts that the personal records "mirror his company phone records." Appellant's Brief at 10. The company records – provided by Verizon Wireless to Suding's employer and admitted at the post-conviction hearing – indicate only that calls were placed to or from Suding's telephone between 6:26 a.m. and 4:50 p.m. on July 29, 2009. They do not show that Suding was miles and hours away from his wife during the recording made by her.[7] Nor do they tend to show that Suding did not engage in a conspiracy.

As best we can discern, Suding's argument of exculpation at least partially rests upon his premise that the police officer providing the recording device committed perjury when he testified that he turned on the recorder at 2:30 p.m. If the recording began in the morning, as Suding has claimed in submissions to the post-conviction court, the tape would arguably have come to an end while Suding was at work or away from home. However, the attack on witness credibility does not establish a <u>Brady</u> claim. Suding has not shown that the State failed to disclose material exculpatory evidence.

Effectiveness of Trial Counsel

Suding contends he was denied the effective assistance of trial counsel. Effectiveness of counsel is a mixed question of law and fact. <u>Strickland v. Washington</u>, 466 U.S. 668, 698

---

[7] Suding states that the recording started "at 4:47 p.m. and at 7:30 p.m." Appellant's Brief at 31. He provides no record citation for this statement.

(1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in Strickland. Id. To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. Dobbins v. State, 721 N.E.2d 867, 873 (Ind. 1999) (citing Strickland, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. Strickland, 466 U.S. at 687; see also Douglas v. State, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Cook v. State, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the Strickland test are separate and independent inquiries. Strickland, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. Id. In sum, trial strategy is not subject to attack through an ineffective

17

assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. Autrey v. State, 700 N.E.2d 1140, 1141 (Ind. 1998).

In his petition for post-conviction relief, Suding claimed that his trial counsel was ineffective for her failure to: thoroughly attack his wife's credibility, assert the marital privilege to prevent his wife's testimony, present an alibi defense, challenge hearsay, present an intoxication defense, challenge the validity of the search warrant, file appropriate motions, lodge objections and expand cross-examination, hire expert witnesses, and investigate aspects of his wife's recollection of an alleged trip to Kentucky and Illinois to look for a campground site suitable for hiding out. Suding also claimed that trial counsel Cynthia Helfrich ("Helfrich"), as a public defender, had a conflict of interest that precluded her effective representation of him; that is, she was dependent for her livelihood upon assignments from the trial court judges in whose courts she appeared and lodged defenses.

In support of his contentions, Suding presented several witnesses at the post-conviction evidentiary hearings. At the hearing conducted on September 7, 2012, Suding acted pro-se. Suding elicited testimony from James Myers ("Myers") concerning Suding's work schedule at Poindexter Excavating on July 29, 2009. According to Myers, Suding's time card showed that he had worked ten hours on that day; other information indicated that Suding had purchased gas in Danville, Indiana at 8:19 p.m. Myers had "no idea" what Suding did after work. (Tr. 14.) Michele Jackson testified that she had not been contacted by Suding's trial attorney to provide an alibi for Suding, although she had customarily met

18

with Suding "almost every evening" around 5:45 to 6:00 p.m. (Tr. 32.) Mike Covey testified that he had acted as a liaison between Suding and Helfrich but Helfrich had refused his calls. Shane Bunnell testified that Helfrich had not contacted him to investigate whether Renee had "cleaned out" the marital bank account. (Tr. 39.)

Suding called Helfrich as a witness and elicited her admissions that she had not requested drug testing of Renee, she had not asserted spousal privilege to prevent Renee's testimony, she had not requested funds for an expert witness, she had not presented an alibi defense, and she had not consulted with an expert regarding the futility of a soft drink bottle as a home-made gun silencer. Helfrich testified that she did not believe that Suding could present a viable alibi defense, in part because he had acknowledged in a police interview that it was his voice on the tape Renee had turned over to authorities. In Helfrich's opinion, the best defense was that Suding had merely been "blowing off steam" and had no intent to commit murder. (Tr. 61.) Helfrich further testified that she had researched spousal privilege and believed that Renee was legally permitted to waive her spousal privilege and testify against Suding. She opined that Renee's drug use was known to jurors because an evidentiary photograph showed marijuana as an item present when the Suding residence was searched. Also, Helfrich noted that Renee had admitted to drug use.

When the evidentiary hearing was reconvened on December 14, 2012, Suding was represented by counsel, who continued the direct examination of Helfrich. Helfrich acknowledged that she had received a letter of explicit instructions from Suding regarding his desired representation; in at least some instances, Helfrich had not complied with Suding's

19

directives. She further acknowledged that she had not requested Suding's personal telephone records and she didn't "believe" she saw such records supplied by the State. (Tr. 130.) However, Helfrich stated that she had "no reason to believe" that the telephone records were exculpatory. (Tr. 131.) She had chosen to pursue a defense – consistent with Suding's claim to police that he had been joking – that Suding was "blowing off steam" when he made recorded statements to Renee. (Tr. 170). Helfrich reiterated her opinion that an alibi defense was not viable and, given the tape recording, Renee's identification, and Suding's statement to police, could only bring "incredulous looks from the jury." (Tr. 172.)

When questioned concerning a possible conflict of interest on the part of her law partner, Helfrich indicated that her partner had represented North Salem Bank in a collection matter. However, she denied having any knowledge of a case involving Suding and North Salem Bank. Helfrich conceded that she had not appealed the denial of a bond reduction, she had not moved to suppress evidence gained in the execution of the search warrant, she had not challenged venue, and, during the State's opening statement, she had "dropped the ball" as to an appropriate objection. (Tr. 167.) Explaining her lack of challenge to the search warrant, Helfrich disagreed with Suding's contention that a police detective had made a false statement in order to procure the warrant.

Suding testified that he had informed Helfrich of Renee's mental health history, including schizophrenia, depression, anxiety, and post-traumatic stress disorder. According to Suding, he had received less than all of Renee's mental health records in response to his endeavors to obtain them. He expressed his belief that the search warrant for his residence

20

specifically excluded vehicles and he explained that he had desired the trial-preparation assistance of a voice analyst, a firearms expert, and an expert to interpret Renee's mental health records.[8]

On appeal, Suding claims that he had a viable alibi defense, which his trial counsel ignored. The failure to present an alibi defense is not necessarily ineffective assistance of counsel. D.D.K. v. State, 750 N.E.2d 885, 891 (Ind. Ct. App. 2001). Suding alleges he had ready and willing alibi witnesses that Helfrich did not contact. However, the evidence presented at the post-conviction hearing does not support Suding's claim of alibi. His former employer acknowledged that Suding worked long hours; his friend Michele Jackson indicated that she customarily met with Suding in the early evening. This testimony falls far short of relating that, in the specific time frame of the challenged tape recording, Suding was with a person other than his wife in a different location. Helfrich's decision to forego an alibi defense and argue that Suding could be heard on tape venting his emotions as opposed to seriously planning murders is within the range of reasonable professional norms.

As Suding observes, Indiana law provides for the assertion of a marital privilege. Husbands and wives "shall not be required to testify … as to communications made to each other." Ind. Code § 34-46-3-1(4). The privilege protects against compelled testimony, but does not bar the spouse from testifying if the spouse chooses to do so. Glover v. State, 836 N.E.2d 414, 422 (Ind. 2005). Renee waived the marital privilege and testified against

---

[8] Suding attempted, through the testimony of his teenaged daughter, to present evidence that he may have been involuntarily intoxicated as a consequence of Renee's conduct. However, the proffered testimony was stricken by the post-conviction court upon motion from the State.

Suding. Despite Suding's wishes to the contrary, Suding's trial attorney could not prevent Renee's testimony by pointing out that she was Suding's wife on the date of communication.

As for an alleged conflict of interest arising from Helfrich's law partner's representation of a bank, Suding has failed to show its actual existence. Although Suding alludes to some account at North Salem Bank, the post-conviction evidence indicates only that Renee "cleaned out" an account and Helfrich's partner, Mr. Casey, had represented North Salem Bank "on a collection matter." (Tr. 30, 152.) Helfrich denied having any knowledge of a case involving Suding and the bank her partner represented.

Suding has also strenuously argued that his trial counsel should have moved to suppress evidence obtained as a result of a search warrant. Although it is not entirely clear what items were obtained from the residence and what items were obtained from a vehicle, Suding insists that incriminating evidence – apparently, firearms – was obtained when officers exceeded the authority granted under the search warrant and searched a vehicle. He also claims that a police officer lied about a prior charge against Suding to present Suding in a negative light and make the issuance of the search warrant more likely. According to Suding, the officer had ready documentation to show that the charge had been dismissed.

Helfrich conceded that she did not file a motion to suppress on grounds that the police exceeded the scope of the search warrant. However, her testimony revealed her trial strategy. With respect to the firearms, she testified:

> Because I felt that it would be better to let the State bring in the arsenal of guns you had and then cross-examine their witnesses on the fact that the guns were all legally possessed, and to show the jury that you did nothing wrong with possessing the guns. The State was making a big deal of the guns, I didn't

22

think they were a big deal, and I, and I thought it was best to show the jury I didn't think they were a big deal.

(Tr. 58.) As for Helfrich's decision not to oppose the search warrant on grounds that it was procured by perjury, Helfrich testified that she would not characterize the police officer's testimony as "a false statement." (Tr. 163.) Helfrich explained that the officer had simply stated that he wasn't aware of the outcome of a prior charge against Suding.

As previously observed, counsel is afforded considerable discretion in the choice of strategy and tactics. Timberlake, 753 N.E.2d at 603. We do not find Helfrich's strategy so deficient as to fall outside the objective standard of reasonableness. Too, while Helfrich admittedly did not object to a reference to domestic violence made by the prosecutor in an opening statement, an isolated mistake or instance of bad judgment does not necessarily render representation ineffective. Id.

Finally, Suding contends that his trial counsel was ineffective for her failure to more thoroughly challenge Renee's credibility. In Suding's view, Renee's mental health records, child custody evaluation, subsequent arrest, and alleged drug use would have undermined her testimony, had trial counsel obtained and presented relevant documentation and expert witnesses. By the time of the post-conviction hearings, some of Renee's mental health records had been provided to Suding, albeit less than he desired. However, he did not present evidence to the post-conviction court tending to show that Renee had been an incompetent witness. Moreover, it is clear that trial counsel had a near-insurmountable burden in challenging Renee's veracity because the incriminating conversation had been recorded and Suding had admitted in a police interview that it was his voice on the tape. We

23

cannot say that additional witnesses and documents directed toward and explaining Renee's life struggles would likely have changed the outcome of Suding's trial.

Trial counsel's efforts and strategy, although they did not ultimately achieve the result desired by Suding, were not so unreasonable as to constitute ineffective assistance of counsel. See Badelle v. State, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, counsel's decision not to seek out additional witnesses was a judgment call within the wide range of reasonable assistance), trans. denied.

### Effectiveness of Appellate Counsel

A defendant is entitled to the effective assistance of appellate counsel. Stevens v. State, 770 N.E.2d 739, 760 (Ind. 2002). The two-pronged standard for evaluating the assistance of trial counsel first enunciated in Strickland is applicable to appellate counsel ineffective assistance claims. Bieghler v. State, 690 N.E.2d 188, 192 (Ind. 1997). There are three basic categories of alleged appellate ineffectiveness: (1) denying access to an appeal, (2) waiver of issues, and (3) failure to present issues well. Id. at 193-95. Here, the second category is implicated.

"To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential." Henley v. State, 881 N.E.2d 639, 645 (Ind. 2008). Upon review, the performance prong is evaluated by applying the following test: (1) whether the unraised issues are significant and obvious from

the face of the record and (2) whether the unraised issues are clearly stronger than those raised.  Id.

Suding claims that his appellate counsel should have argued that the State withheld exculpatory evidence in violation of Brady.  However, for reasons previously discussed, this was not an issue both "significant and obvious from the face of the record."  Henley, 881 N.E.2d at 645.  Suding has not shown that he was denied the effective assistance of appellate counsel.

**Conclusion**

Suding has not shown that he was denied procedural due process.  He has not established a Brady claim; nor has he demonstrated that he was denied the effective assistance of trial or appellate counsel.  Accordingly, the post-conviction court did not err in denying Suding post-conviction relief.

Affirmed.

KIRSCH, J., and MAY, J., concur.