

**FILED**

Jul 07 2017, 9:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and
Cass County Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Jodi Kathryn Stein
Larry Allen
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon Black,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 7, 2017

Court of Appeals Case No.
09A04-1610-CR-2312

Appeal from the Cass Superior
Court

The Honorable Richard A.
Maughmer, Judge

Trial Court Cause No.
09D02-1603-F2-5

**Baker, Judge.**

[1] Brandon Black appeals his convictions for Level 2 Felony Conspiracy to Commit Robbery Resulting in Serious Bodily Injury[1] and Level 2 Felony Robbery Resulting in Serious Bodily Injury.[2] He argues that he was denied the right to counsel at a critical stage of the proceedings, that the trial court erred by admitting into evidence the victim's identification of Black, and that his enhanced convictions violate Indiana's double jeopardy law. We find that Black was denied the right to counsel at a critical stage of the proceedings but that he was not prejudiced by the denial, that any error of admitting into evidence the victim's identification was harmless, and that his enhanced convictions violated double jeopardy. Accordingly, we affirm in part, reverse in part, and remand.

# Facts[3]

[2] In January 2015, Sanjay Amin lived and worked at the Super 8 Motel in Logansport. Ashley Reinholt rented a room at the motel on two occasions that month. Christopher Brown stayed with Reinholt on both occasions, and Black, who was Brown's cousin, was often present as well. Amin knew both Black and Brown by sight.

---

[1] Ind. Code § 35-42-5-1; Ind. Code § 35-41-5-2.

[2] I.C. § 35-42-5-1.

[3] We held oral argument in Indianapolis on June 21, 2017. We thank counsel for their excellent, informative oral and written presentations.

[3] On January 17, 2015, Reinholt and Amin made a plan to meet at the Manor Motel and Amin would pay Reinholt for sex. Reinholt told Brown of their plan, and Brown suggested that they rob Amin instead. Brown told Black about the idea and left the motel to pick up Black. Around 11:00 p.m. that night, Amin observed from the front desk Brown return to the motel with Black. Brown and Black picked up Reinholt and drove to the Manor Motel. Shortly thereafter, Amin also departed for the Manor Motel, and he observed the other vehicle enter the Manor Motel parking lot.

[4] Reinholt rented a motel room and then briefly returned to Brown's vehicle before Black and Brown left the parking lot. Amin recognized them as they passed by. Reinholt entered the motel room by herself and texted the room number to both Amin and Brown. After Amin arrived, Reinholt stepped outside to smoke a cigarette; when she re-entered, she left the door unlocked. Reinholt told Amin to remove his clothing, which he did.

[5] A few minutes later, Black and Brown entered the motel room. Their faces were covered. Brown began to beat Amin's face with his fists while Black shoved Reinholt against the wall. Amin heard one of the men say Reinholt's name. He recognized Black and Brown from their clothing, which they had worn earlier that day at the Super 8 Motel. Amin suffered serious injuries from the beating. Black and Brown took Amin's clothes and wallet, and fled the scene. Amin returned to the Super 8 Motel. Reinholt stayed in the Manor Motel room and texted Brown to pick her up.

[6] Amin was in the Super 8 Motel lobby with another employee when Reinholt, Black, and Brown entered. Black and Brown quickly left and drove away. The police were called, and Logansport Police Officer Travis Yike responded at midnight. Amin, worried about his family's potential reaction to what had happened, initially told Officer Yike that he had fallen in the snow. Reinholt told Officer Yike that she and Amin had been robbed, but she was unable to consistently tell the same story. Amin eventually said that he had been robbed.

[7] Amin and Reinholt were taken to the hospital for treatment. Meanwhile, Detective D.J. Sommers went to the Manor Motel, where he observed blood in the bedding of the motel room and a blood trail from the motel room to the parking lot. Detective Sommers then went to the hospital, where he spoke with Reinholt and tried to speak with Amin. The detective could get only some information from Amin due to Amin's limited English skills and severe facial injuries.

[8] Early the next morning, Amin returned to his room at the Super 8 Motel. A police officer took him to the lobby and asked whether Amin could identify anyone; both Black and Brown stood outside in police custody. Because it was dark, Amin asked for additional light, and a police officer shined a light on the two men. Amin recognized Black and Brown based on their clothing as the two men who had beaten and robbed him, as the two men who had dropped Reinholt off at the Manor Motel, and as the two men living with Reinholt in her Super 8 Motel room.

[9]     The State initially charged Black with Level 3 felony conspiracy to commit robbery resulting in bodily injury and Level 6 felony battery with moderate bodily injury. A February 2016 joint jury trial for Brown and Black ended in a mistrial because the jury was deadlocked.

[10]    On February 24, 2016, the State filed an amended information. The modified charges included Level 2 felony conspiracy to commit robbery resulting in serious bodily injury, Level 2 felony robbery resulting in serious bodily injury, and Level 5 felony battery resulting in serious bodily injury. On February 29, 2016, an initial hearing took place on the amended information; Black's trial counsel was not present. During the hearing, the State said that after the trial court approved the amended charges, the State would dismiss the two original charges. The trial court stated the sentence range for each charge. The trial court asked Black whether he understood the allegations against him at this point. Black answered affirmatively and did not make any objections.

[11]    On July 19, 2016, the day before the trial, the State filed an amended information that reflected the three pending charges against Black and did not include the two original charges. A jury trial took place on July 20-21, 2016. At the start of the trial, the State filed two more amended informations to clarify caption and citation mistakes. Black objected to these corrections. The trial court overruled the objection, finding that the corrections related to technicalities and not the substance of the allegations.

[12] At trial, Amin testified that he identified Black and Brown outside the Super 8 Motel early in the morning after the robbery. Black objected to the testimony, arguing that it was based on an impermissible show-up identification procedure. The trial court conducted a brief hearing outside the presence of the jury, overruled the objection, and admitted the evidence.

[13] The jury found Black guilty of Level 2 felony conspiracy to commit robbery resulting in serious bodily injury and Level 2 felony robbery resulting in serious bodily injury; it acquitted him of Level 5 felony battery. At sentencing, the trial court imposed consecutive thirty-year sentences for both Level 2 felonies for an aggregate of sixty years imprisonment. Black now appeals.

## Discussion and Decision

[14] Black makes four arguments on appeal, which we consolidate and restate as: (1) that he was denied the right to counsel at a critical stage of the proceedings, (2) that the trial court erred by admitting into evidence the victim's identification of Black, and (3) that his enhanced convictions violate Indiana's double jeopardy law.

# I.     Hearing on Amendments to Charging Information

## A. Right to Counsel

Black first argues that he was denied the right to counsel during a critical phase of the case—specifically, during the February 29, 2016, hearing on the State's amendments to the charging information.

The Sixth Amendment to the United States Constitution requires the assistance of counsel at all critical stages of proceedings. *Hernandez v. State*, 761 N.E.2d 845, 849 (Ind. 2002). The right to the assistance of counsel is so essential that prejudice is presumed when there is actual or construction denial of the assistance of counsel; however, "denial of this constitutional right is 'subject to a harmless error analysis unless the deprivation, by its very nature, cannot be harmless.'" *Id.* (quoting *Rushen v. Spain*, 464 U.S. 114, 117-18 n.2 (1983)).

The right to the assistance of counsel at a critical point in the trial encompasses any stage of the prosecution where counsel's absence might derogate the defendant's right to a fair trial. *Id.* at 850. A stage is a critical stage when incrimination may occur or when the opportunity for effective defense must be seized or be forgone. *Id.* Our Supreme Court has stated that a critical stage exists when "the defendant is confronted with the intricacies of the law or the advocacy of the public prosecutor or prosecuting authorities." *Id.* The defendant bears the burden of establishing that there is a critical stage in the

proceeding. *Id.* If there is a critical stage, the State bears the burden of establishing the harmlessness of error. *Id.*

[18] At the February 29, 2016, hearing, regarding the amendment of the charging information, Black did not have counsel present. He contends that he was faced with the intricacies of the law and the advocacy of the public prosecutor. Black had already been tried once, and jeopardy had attached to his original two charges. The State argues that the hearing in question was an initial hearing on the amended charges, and that an initial hearing is not a critical stage of the proceedings that requires counsel.

[19] We find that the February 29, 2016, hearing was not an initial hearing; rather, it was one hearing in a proceeding that began on January 19, 2015, when the original charges were filed against Black. The February 29, 2016, hearing was a continuance of those proceedings during which the State filed to amend the charges against Black. Generally at initial hearings, defendants do not yet have attorneys to represent them; however, in this case, at the time of this hearing, Black had counsel who had been representing him since January 23, 2015—more than a year before this "initial" hearing—and who continued to represent him during his second trial. In other words, although the hearing took place in advance of one trial, it followed quickly on the heels of Black's mistrial. The timing speaks for itself; the hearing was not an initial hearing, but a continuance of a proceeding that had been ongoing for more than a year.

[20] Moreover, during the so-called initial hearing, the State moved to amend the charging information, another indication that the hearing was not an initial hearing. And the amendments presented more severe and additional charges against Black than the original charges. As a result, during this hearing, Black was confronted with the intricacies of the law and the advocacy of the prosecuting authorities. We therefore conclude that this hearing was a critical stage in the proceeding and that Black was entitled to the assistance of his counsel during it.

[21] When a defendant is denied the assistance of counsel, prejudice is presumed unless the denial of this right is harmless error. We find that here, although Black was denied his right to counsel at the hearing, the State has shown that the error was harmless. Although defense counsel was not present at the February 29 hearing, the record shows that defense counsel knew of the amended charges. The State filed the amended charges on February 24, 2016, nearly five full months before the jury trial began on July 20, 2016. During that time period, defense counsel did not raise an objection to the amended charges, did not move to dismiss the charges, and did not request a continuance of the July trial. Because Black did not object, a reasonable inference can be made that Black did not believe that the amendment affected his defense, which was that the State did not sustain its burden of proof. In sum, Black had ample time and opportunity to be heard by filing an objection to or moving to dismiss the amendments. He also had ample time and opportunity to prepare for and defend against the charges. *See Mannix v. State*, 54 N.E.3d 1002, 1010 (Ind. Ct.

App. 2016) (finding that five months between the granting of the amendment and the trial was a significant amount of time to prepare for and defend against the new charge). Thus, we find that Black was not prejudiced by the amendments, and if any error did occur, it was harmless.

## B. Propriety of the Amendments

[22] Black also contends that, although he did not object to the amendments, the trial court's approval of them was fundamental error. Black argues that fundamental error occurred because the State tried to manipulate the charges against Black. It did so first on February 24, 2016, when it amended the charging information, and next on July 19, 2016, when it refiled the charging information without the original two charges, essentially dismissing the original two charges in the case without filing a motion or stating its reasons for doing so. Consequently, during the second trial, Black was tried on three charges that were different and more severe than the charges in his original trial.

[23] The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of an issue on appeal. *Benson v. State,* 762 N.E.2d 748, 755 (Ind. 2002). Fundamental error is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible. *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

[24] The charging information serves to "advise the accused of the particular offense charged so that he can prepare a defense, and so that he can be protected from being twice placed in jeopardy for the same offense." *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007). Indiana Code section 35-34-1-5(b) provides that

> (b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time: . . .
>
> > (2) before the commencement of trial;
>
> if the amendment does not prejudice the substantial rights of the defendant. When the information or indictment is amended, it shall be signed by the prosecuting attorney or a deputy prosecuting attorney.

A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge. *Blyth v. State*, 14 N.E.3d 823, 829 (Ind. Ct. App. 2014). If the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. *Id.* The question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Id.*

[25] Under Indiana Code section 35-34-1-5(d), when an amendment affects a defendant's substantial rights, the court must give all parties adequate notice of the intended amendment and an opportunity to be heard. If the court allows

the amendment, it must, upon motion by the defendant, order any continuance necessary to allow the defendant adequate opportunity to prepare the defendant's defense. *Id.* If the State files a motion to dismiss a charging information, the motion must state the reason for dismissal. Ind. Code § 35-34-1-13(a).

[26] Assuming solely for the sake of argument that the trial court's approval of the amendments was erroneous, for an error to be fundamentally erroneous, the record must reveal a harm so prejudicial as to make a fair trial impossible. We agree with Black that the State could and should have proceeded in a manner more aligned with our statutes' direction, namely, by formally moving to dismiss the original charges and including the reason for their dismissal, either when it moved to amend the charges or shortly after the trial court approved the amendments. Moreover, had the State thoroughly reviewed the amendments it filed on February 24, 2016, it could have avoided filing additional amendments to correct its mistakes immediately prior to the second trial.

[27] But that lack of proper procedure notwithstanding, Black was still able to receive a fair trial. First, five months passed between the approval of the amendments and his second trial, giving Black ample opportunity to object to or move to dismiss the amendments. Second, the record suggests that the amendments did not affect Black's defense that the State did not sustain its burden of proof. Indeed, because the amendments elevated the charges, the State faced an even higher burden of proof in the second trial than it did in the

first. For these reasons, we find Black's fundamental error argument unavailing.

## II. Identification of Black

[28] Black next argues that the show-up identification procedure was unduly suggestive, and that the trial court erred in admitting testimony regarding the identification.

[29] The Fourteenth Amendment's guarantee of due process of law requires the suppression of evidence when the procedure used during a pretrial identification is impermissibly suggestive. *Harris v. State,* 716 N.E.2d 406, 410 (Ind. 1999). A show-up identification is an "on-the-scene confrontation between a witness and a suspect conducted within a reasonably short time after the commission of the crime for the purpose of determining whether the witness can identify the suspect." *Dillard v. State*, 257 Ind. 282, 286, 274 N.E.2d 387, 389 (1971). In some circumstances, a show-up identification procedure "may be so unnecessarily suggestive and so conducive to irreparable mistake as to constitute a violation of due process." *Hubbell v. State,* 754 N.E.2d 884, 892 (Ind. 2001).

[30] We review challenges to show-up identifications by examining the totality of the circumstances surrounding the identification, including (1) the opportunity of the witness to view the offender at the time of the crime; (2) the witness's degree of attention while observing the offender; (3) the accuracy of the witness's prior description of the offender; (4) the level of certainty

demonstrated by the witness at the identification; and (5) the length of time between the crime and the identification. *Rasnick v. State*, 2 N.E.3d 17, 23 (Ind. Ct. App. 2013).

[31] Even where a show-up identification is deemed unduly suggestive, a subsequent, in-court identification may still be admissible if the State proves that an independent basis for the in-court identification exists. *Gordon v. State,* 981 N.E.2d 1215, 1219 (Ind. Ct. App. 2013). In determining whether an independent basis for the in-court identification exists, the inquiry is whether, under the totality of the circumstances surrounding the witness's initial observation of the perpetrator at the scene of the crime, the witness could (1) resist any suggestiveness inherent in the improper show-up staged by the police and (2) make an accurate in-court identification based on that earlier observation. *Rasnick*, 2 N.E.3d at 25.

[32] Black argues that the admission of Amin's testimony that he could identify Black as wearing the same clothes as one of his assailants was reversible error. Although we agree with Black that the time elapsed between the crime and the identification—approximately five hours—was long enough to make the show-up unnecessarily suggestive, we find that any error in admitting the identification into evidence was harmless.

[33] First, Amin knew who Black was from seeing him at the Super 8 Motel, and he was able to identify Black at trial independent of the show-up. Amin testified that he knew Black as one of two men who spent time with Reinholt in January

at the Super 8 Motel, where Amin lived and worked. He testified that he observed Black and Brown pick up Reinholt at the Super 8 Motel, drive her to the Manor Motel, and wait while she registered as a motel guest. Amin testified that he observed Black and Brown drive by him as they left the Manor Motel. Further, Amin testified at trial that although he could not see the faces of his attackers, he recognized them based on their clothing, which he had seen when they were at the Super 8 Motel earlier that day. Amin had also seen Black with Reinholt, including soon after the crime.

[34] Second, in addition to Amin's testimony, Reinholt identified Black as one of the two men who attacked Amin. Reinholt testified to the conspiracy to rob Amin and to Black's part in the crime. The jury had ample evidence beyond the evidence of the show-up to find that Black was one of Amin's two assailants. Accordingly, if the admission of the evidence was error, it was harmless.

## III. Double Jeopardy

[35] Black contends that his enhanced convictions for conspiracy to commit robbery and robbery violate Indiana's double jeopardy law. He asks this Court to reduce his robbery conviction from a Level 2 felony to a Level 5 felony. The State concedes a double jeopardy violation.

[36] Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Two or more offenses are the same offense in violation of this section "if, with respect to either the

statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Double jeopardy is violated when "a defendant's conviction for one crime is enhanced for . . . causing particular additional harm" because that "harm cannot also be used as an enhancement of a separate crime." *Id.* at 56 (Sullivan, J., concurring). When two convictions are found to violate double jeopardy principles, "a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation." *Richardson*, 717 N.E.2d at 54. Whether multiple convictions violate double jeopardy is a question of law, which this Court reviews de novo. *Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012).

[37] Indiana Code section 35-42-5-1 governs robbery:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> > (1) by using or threatening the use of force on any person; or
> >
> > (2) by putting any person in fear;
>
> commits robbery, a Level 5 felony. However, the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Level 2 felony if it results in serious bodily injury to any person other than a defendant.

[38]    In this case, the information for the conspiracy to commit robbery resulting in serious bodily injury charge stated that Black agreed with another person to take property "by using force; said act resulting in serious bodily injury to Sanjay Amin; to-wit: knocking out three teeth . . . ." Appellant's App. Vol. II p. 153. The information for the robbery resulting in serious bodily injury charge stated that Black knowingly took property "by using force; said act resulting in serious bodily injury to Sanjay Amin, to-wit: knocking out three teeth . . . ." *Id.* at 154.

[39]    Black argues that the same bodily injury suffered by Amin—the knocking out of three of his teeth—was used to enhance both of Black's convictions, which is contrary to Indiana law. *See, e.g., Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002) ("where a burglary conviction is elevated to a Class A felony based on the same bodily injury that forms the basis of a Class B robbery conviction, the two cannot stand").

[40]    We agree, and we remedy the violation by reducing Black's robbery conviction to a Level 5 felony. *See Young v. State*, 57 N.E.3d 857, 860 (Ind. Ct. App. 2016) ("Upon remedying a double jeopardy issue, the trial court need not undertake a full sentencing reevaluation, but rather the reviewing court will make this determination itself, being mindful of the penal consequences that the trial court found appropriate") (citation and internal quotation marks omitted). Both parties concede that the trial court gave Black the maximum penalty for his robbery conviction. We amend his sentence accordingly to the maximum sentence allowed for a Level 5 felony, which is six years. Ind. Code § 35-50-2-

6(b). We remand to the trial court with instructions to enter judgment of conviction for robbery as a Level 5 felony and amend Black's sentence to six years, to be served consecutively to Black's thirty-year sentence for conspiracy to commit robbery resulting in serious bodily injury.

[41] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

Barnes, J., and Crone, J., concur.